UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARINE GEOTECHNICS, LLC, | } | |
| | } | |
| Plaintiff, | } | |
| VS. | } | CIVIL ACTION NO. H-07-3499 |
| | } | |
| GARETH WILLIAMS; dba PROBEX | } | |
| EXPLORATION SERVICES, LTD., *et al*, | } | |
| | } | |
| Defendants. | } | |

## OPINION & ORDER

Pending before the Court is Defendants Alfredo Reynoso Durand ("Durand") and Subtec S.A. de C.V. ("Subtec")'s (collectively "the Defendants") Motion to Dismiss and Motion for Summary Judgment (Doc. 40); and the response thereto. For the reasons explained below, the Court GRANTS Defendants' motion.

## I.    Background & Relevant Facts.

This case concerns an oil project for the national Mexican oil company, Pemex ("the Pemex project") off the Gulf Coast. On May 2, 2005, Subtec entered into a private joint venture contract with C&C Technologies, Inc. and Coastal Marine Construction and Engineering Limited ("COMACOE") in Mexico. Doc. 40 Exh. 1 at 2. The purpose of the venture was to submit a bid for the "2006 campaign" of geophysical and geotechnical surveys for the Pemex project. Doc. 40 Exh. 1 at 9. Durand, acting as agent for Subtec, was a signatory to the agreement. *Id.* The contract provided that all three signatories would be "jointly obliged to undertake any liability derived from the contract entered (given the case) as bidders and in due time as suppliers of the goods and serviced [sic] required [in the bid]." *Id.* at 11.

In September 2005, COMACOE, through its disclosed agent Alejandro Acosta ("Acosta"), as well as other third parties, invited Plaintiff Marine Geotechnics, LLC, ("Marine") to participate as a subcontractor in the bid by providing geotechnical work on the Pemex project. Doc. 42 Exh. 1 at ¶6.   As Marine concedes, Subtec, however, was not involved in these negotiations.  *See generally* Declaration of Cary Honganen, Manager of Marine, Doc. 42 Exh. 1. In fact, Durand and Subtec did not deal directly with Marine throughout the Pemex project.  *Id*. Instead Marine, which was located in Harris County, Texas, dealt exclusively with Acosta and other third parties.  *Id*.

The only substantive direct contact that occurred between Marine and Subtec was a single wire transfer.   Doc. 42 Exh. 1 at ¶16.   Allegedly COMACOE stopped transferring amounts due to Marine for geotechnical work performed.  *Id*.   On July 5, 2006, COMACOE contacted Durand and arranged for Subtec to transfer $50,000 in funds to Marine directly as a set off for invoices issued by COMACOE to Subtec.  Doc. 40 Exh. 1 at 13.

According to Marine, it is still due payment for its work performed on the Pemex project.   Immediately preceding the filing of the instant suit, Cary Honganen ("Honganen") telephoned and emailed Durand seeking payment from Subtec as a partner in the joint venture with COMACOE.  Honganen cited to the clause in the joint venture contract providing for joint liability by all signatories for the bid.  *See generally* Doc. 42 Exh. 2.  According to Honganen, Durand assured him that Subtec would pay Marine directly for geotechnical work performed rather than go through COMACOE.  Doc. 42 Exh. 2 at 2.  In the emails attached to Honganen's declaration, however, Durand maintains that Subtec cannot make payments to Marine except with COMACOE's authorization as "[Marine] is a COMACOE supplier."

On January 23, 2007, Marine filed suit against Acosta, d/b/a QVG; Mumford,

d/b/a QVG; Sanjeeve Rai ("Rai"), d/b/a COMACOE; COMACOE; Durand, d/b/a Subtec; Subtec; Williams, d/b/a Probex; and Probex in 333rd Judicial District Court, Harris County, Texas.   In its original state court petition, MGLLC asserted causes of action for breach of contract, *quantum meriut*, breach of fiduciary duty, conversion, negligence, tortious interference, and fraud, as well as a request for its attorney's fees.

II.          Legal Standard on Personal Jurisdiction

"A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).  The Fifth Circuit has found that the Texas long-arm statute is "coextensive with the federal constitutional limits of due process and normally generates an inquiry limited to the scope of the Fourteenth Amendment's Due Process Clause."   *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (citing *Religious Tech. Ctr. V. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003)).

In determining whether a federal district court may exercise personal jurisdiction over a nonresident defendant, the court concentrates on whether the defendant has "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice."  *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).   Minimum contacts may be established through specific personal jurisdiction or general personal jurisdiction.

If a cause of action arises out of a defendant's purposeful contacts with the forum state, minimum contacts are established, and the court may exercise specific personal

jurisdiction.  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).  "Even a single, substantial act directed toward the forum can support specific jurisdiction."  *Dalton*, 897 F.2d at 1361 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  There must, however, be some act by which the nonresident defendant "purposefully availed himself of the benefits and protections of the forum state's laws, so as reasonably to anticipate being haled into court there."  *Dalton*, 897 F.2d at 1361 n. 1 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In deciding whether to exercise specific jurisdiction over a nonresident defendant, the Court must find that (1) the defendant purposefully directed his activities toward the forum state; (2) the cause of action arises out of or results from those contacts; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice.  *Burger King Corp.*, 471 U.S. at 463.

The *Burger King* case is instructive on the first element of specific jurisdiction.  Jurisdiction is proper if the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state."  *Burger King Corp.*, 471 U.S. at 475 (citing *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957); *Kulko v. Superior Court of California In and For City and County of San Francisco*, 436 U.S. 84, 94 n. 7 (1978)).  *Burger King* went on to explain, if the defendant has deliberately engaged in significant activities within the forum state, or he has created "continuing obligations" between himself and forum state residents, then "he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Burger King Corp.*, 471 U.S. at 475-76 (citing *Keeton v. Hustler Magazine,*

*Inc.*, 465 U.S. 770, 781 (1984); *Travelers Health Ass'n. v. Com. of Va. Ex rel. State Corp. Com'n*, 339 U.S. 643, 648 (1950)).

With respect to the second element of specific jurisdiction, "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." *Helicopteros*, 466 U.S. at 414 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

On the third element of specific jurisdiction, if the plaintiff establishes minimum contacts between the nonresident defendant and the forum state, the burden then shifts to the defendant to show that it would be unfair and unreasonable for the court to exercise jurisdiction. *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 2008 WL 315293, at *8 (5th Cir. 2008) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). Courts must consider the following five factors in determining whether it is fair and just to exercise personal jurisdiction over a defendant:

1. the burden upon the nonresident defendant;

2. the interests of the forum state;

3. the plaintiff's interest in securing relief;

4. the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

5. the shared interest of the several States in furthering fundamental substantive social policies.

*Moreno v. Poverty Point Produce, Inc.*, 243 F.R.D. 265, 272 (S.D. Tex. 2007) (quoting *Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F. Supp. 2d 725, 730 (S.D. Tex. 2006)); (citing *Central Freight Lines*, 322 F.3d at 376)).

If a cause of action does not arise out of a nonresident defendant's purposeful contacts with the forum state, "due process requires that the defendant have engaged in 'continuous and systematic contacts' in the forum to support the exercise of 'general' jurisdiction over that defendant." *Dalton*, 897 F.2d at 1362 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)). For a court to exercise general personal jurisdiction, the plaintiff must show that the minimum contacts between the nonresident defendant and the forum state are of a "more extensive quality and nature" than those required for specific personal jurisdiction. *Dalton*, 897 F.2d at 1362 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

The plaintiff has the burden of making a *prima facie* showing that the court indeed has personal jurisdiction over a nonresident defendant. *Revell*, 317 F.3d at 469. In deciding whether it has personal jurisdiction, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469 (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). Additionally, the court "must accept the plaintiff's 'uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Revell*, 317 F.3d at 469 (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

### III.  Analysis.

#### a.  Specific Personal Jurisdiction.

Subtec and Durand seek dismissal of the suit as against them, arguing that the Court lacks personal jurisdiction over them because they never purposefully availed themselves of the forum state, Texas. Marine's asserted basis for the Court to exercise specific personal

jurisdiction is that Subtec was involved in a joint venture with partners including COMACOE in Mexico.[1]  COMACOE then subcontracted with Marine in Texas.  Such a theory is insufficient to support personal jurisdiction over the Subtec and Durand because entering into a joint venture in Mexico for a project to be performed off the coast of Mexico does not subject Subtec to being haled into court in Texas because a subcontractor hired by another partner is located in Texas.

For example, in *3-D Electric Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 143 (Tex. App. Dallas 1986), a general contractor was not subject to specific personal jurisdiction in the state in which the subcontractor was hired to do work in another state.  Barnett, a general contractor hired 3-D Electric in Texas to perform subcontracting work in Trinidad, Colorado.  *Id*. 3-D Electric argued that Barnett should be subject to specific personal jurisdiction in Texas.  *Id*. Barnett had contacted 3-D Electric over the telephone in Texas, initiated correspondence and made payments into Texas, but these were found insufficient to establish Barnett's minimum contacts with Texas for personal jurisdiction.  *Id*.

Here, Subtec and its agent Durand operated at one level further removed than the general contractor in *3-D Electric*.  It was COMACOE that initiated and negotiated the transaction whereby Marine was brought on as a subcontractor on the Pemex project.  Subtec was only a partner to COMACOE in the joint venture.  Subtec made one payment on behalf of COMACOE to Marine.  Subtec also engaged in communications with Marine, but it emphasizes the fact that Marine supplied COMACOE, not Subtec.  Even if the Court were to assume that, due to the joint liability clause in the joint venture agreement, Subtec stood in the shoes of general contractor to Marine as subcontractor, the enumerated contacts with Texas fall squarely within the precedent of *3-D Electric* and preclude a finding of specific personal jurisdiction.

---

[1]    The Plaintiff does not seek to persuade the Court that general jurisdiction exists, nor do any facts support such a theory.

**b.  isdictional Discovery**

Marine argues in the alternative for leave to conduct discovery in order to better ascertain  Subtec and Durand's contacts with Texas.  If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff's right to conduct jurisdictional discovery should be sustained.  Marine has, however, thoroughly detailed what contacts did exist in the two Honganen declarations and attached exhibits.  The story is fully told and does not indicate that further discovery would reveal a smoking jurisdictional gun. There is no need for further discovery.

Accordingly, it is hereby

ORDERED that Defendants Subtec, SA de C.V.'s and Alfredo Reynoso Durand's Motion to Dismiss (Doc. 40) is GRANTED.  Subtec, SA de C.V. and Alfredo Reynoso Durand are dismissed as defendants in this case.  It is further

ORDERED that and Subtec, SA de C.V.'s and Alfredo Reynoso Durand's Motion for Summary Judgment (Doc. 40) is rendered MOOT.

SIGNED at Houston, Texas, this 13th day of July, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE